UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL A. ROSS,

                                        Plaintiff,

                                                                9:05-CV-1112
v.                                                              (FJS/GHL)

ROBERT WOODS, JACKIE KELLY, JAMES
BENNETT,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

MICHAEL A. ROSS, 93-A-1664
Plaintiff *pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ANDREW M. CUOMO                            GERALD J. ROCK, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Michael A. Ross alleges that Defendants Roberts Woods (Superintendent of Upstate

Correctional Facility), Jackie Kelly (Institutional Steward of Upstate Correctional Facility), and

James Bennett (a correctional officer at Upstate Correctional Facility) falsely advised him that a

state court wrongful death action filed against him would not result in money being removed

from his inmate account, offered him assistance defending that action, failed to take the promised

actions, and thus caused Plaintiff to lose a substantial sum of money.  Currently pending before

the Court is Defendants' motion for summary judgment.  (Dkt. No. 50.)  For the reasons that

follow, I recommend that Defendants' motion be granted.

I.      **BACKGROUND**

     A.      **Summary of Plaintiff's Complaint**

The operative complaint is the amended complaint.  (Dkt. No. 14.)  It alleges that:

On October 11, 2002, Plaintiff received a $34,857.57 check from the settlement of a

medical malpractice suit.  (Dkt. No. 14 at ¶ 7(1).)

On January 13, 2003, a temporary injunction was issued freezing Plaintiff's inmate

account at Upstate Correctional Facility.  **(**Dkt. No. 14 at ¶ 7(2).)  Plaintiff's complaint does not

explicitly explain the reason for this injunction.  However, the documents before the Court show

that it was issued to prevent Plaintiff from disbursing the settlement funds while the

representative of the victim of the crime of which Plaintiff was convicted pursued a civil action

against Plaintiff.  (Dkt. 50-17, Ex. D.)    On April 4, 2003, a preliminary injunction was issued

continuing the temporary restraining order.  (Dkt. No. 14 at ¶ 7(3).)

On April 5, 2003, Defendant Jackie Kelly visited Plaintiff at his cell and told him about

the injunction.  She advised him that the injunction was not valid, that Plaintiff would get his

money back, and that she was sending someone to help him.  (Dkt. No. 14 at ¶¶ 6, 7(4).)

Shortly thereafter, the law library supervisor, Defendant Bennett,  took the injunction

order "to make a copy and do an appeal."  (Dkt. No. 14 at ¶ 7(5).)

On July 31, 2003, a wrongful death complaint was filed against Plaintiff on behalf of the estate of Samuel Hines.  The complaint was not signed.  The complaint alleged that Plaintiff murdered Samuel Hines on January 27, 1990, that Plaintiff had "come into certain monies," and that Samuel Hines' estate was entitled to $1 million under Executive Law 632-a.  (Dkt. No. 14 at ¶ 7(6), Ex. 1.)

Defendant Bennet came to Plaintiff's cell a few days later, said the complaint was not valid, and told Plaintiff he would take care of it.  (Dkt. No. 14 at ¶ 7(7).)

On November 6, 2003, an unsigned  notice of motion and affirmation were filed in the wrongful death action.  (Dkt. No. 14 at ¶ 7(8).)  A couple of days later, Defendant Bennett made a copy of the motion and told Plaintiff he would respond to it.  (Dkt. No. 14 at ¶ 7(9).)

On May 4, 2004, a notice of trial was filed in the wrongful death action.  (Dkt. No. 14 at ¶ 7(10).)  Defendant Bennett made a copy of the notice "to continue preparing [Plaintiff's] legal work."  (Dkt. No. 14 at ¶ 7(11).)

On May 25, 2004, the state court, after finding that Plaitniff had defaulted by not answering the wrongful death complaint,  entered judgment against Plaintiff for $200,000.  (Dkt. No. 14 at ¶ 7(12), Ex. 2.)

Plaintiff wrote to Judge Partnow "to find out if any of this was true."  He did not receive any response.  (Dkt. No. 14 at ¶ 7(15).)

During the first week of July 2004, Defendant Kelly told Plaintiff that he did not need to write to anyone because the "documents were without signatures" and assured Plaintiff that he would get his money back.  (Dkt. No. 14 at ¶ 7(17).)  Immediately thereafter, Defendant Bennett visited Plaintiff's cell and showed Plaintiff "some law rule about unsigned documents."  (Dkt.

3

No. 14 at ¶ 7(18).)

On July 30, 2004, Plaintiff received an "Execution With Notice to Garnishee."  It directed the sheriff to satisfy the wrongful death judgment from Plaintiff's inmate account.  It was not signed.  (Dkt. No. 14 at ¶ 7(20), Ex. 3.)

In late August 2004, Defendant Kelly spoke to Plaintiff and noted that the attorney representing Samuel Hines' estate in the wrongful death action had a potential conflict of interest because his law firm was involved in the underlying criminal action.   (Dkt. No. 14 at ¶ 7(22).)

On August 23, 2004, Plaintiff received an unsigned final judgment notice.  (Dkt. No. 14 at ¶ 7(19).)

On February 14, 2005, Defendant Kelly placed a million dollar surcharge on Plaintiff's account.  (Dkt. No. 14 at ¶ 7(24).)

On February 14, 2005, the state court filed a final decision and order directing that the funds be removed from Plaintiff's account. (Dkt. No. 14 at ¶ 7(25).)  Plaintiff alleges that all of his funds were taken, including "the ten percent ... that were exempt."  (Dkt. No. 14 at ¶ 7(28).)

On July 27, 2005, Defendant Bennett searched Plaintiff's cell, "trashed it," and confiscated Plaintiff's legal documents.  (Dkt. No. 14 at ¶ 7(27).)

On August 16, 2005, Plaintiff asked Defendant Bennett "why he did what he did." Defendant Bennett "acted as if he did not know" what Plaintiff was talking about.  (Dkt. No. 14 at ¶ 7(29).)

Plaintiff alleges that he filed several institutional grievances about the facts underlying the complaint and appealed them to the highest level.  One complaint was denied.  Plaintiff received no response to the others.  (Dkt. No. 14 at ¶ 4(b).)

Plaintiff requests $30 million in damages.  (Dkt. No. 14 at ¶ 9.)

As Defendants note (Dkt. No. 50-24 at 7) and Plaintiff acknowledges (Dkt. No. 52-2 at 6), the complaint does not identify the legal theory under which Plaintiff is proceeding.  I have construed the complaint as alleging that all Defendants violated Plaintiff's right to due process and right of access to the courts and that Defendant Bennett violated Plaintiff's Fourth Amendment rights[1].

### B.    Summary of Grounds in Support of Defendants' Motion

Defendants argue that (1) Plaintiff's claims regarding alleged legal work should be dismissed because he did not exhaust available administrative remedies; (2) Plaintiff has not alleged that Defendant Woods was personally involved in any of the alleged violations and cannot raise a triable issue of fact that Defendant Kelly was personally involved in any violations alleged to have occurred after August 2003; (3) Plaintiff has not stated a cause of action for denial of access to courts or due process violations; (4) Plaintiff cannot establish that Defendant Kelly was the proximate cause of any injury; and (5) they are entitled to qualified immunity. (Dkt. No. 50-24.)

---

[1]    Defendants do not address Plaintiff's potential Fourth Amendment claim.  I address it *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches . . . shall not be violated."  U.S. Const. amend IV.  "What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) [internal quotation marks and citation omitted].  The Fourth Amendment's proscription against unreasonable searches does not apply *at all* within the confines of a prison cell.  *Hudson v. Palmer* 468 U.S. 517, 526 (1984); *Demaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."), *aff'd*, 122 F.3d 1055 (2d Cir. 1995). Therefore, I recommend that Plaintiff's Fourth Amendment claim against Defendant Bennett be dismissed.

### C.    Summary of Plaintiff's Response to Defendants' Arguments

In response, Plaintiff argues that (1) he exhausted his administrative remedies; (2) Defendant Woods was personally involved in the alleged violations; (3) he has stated a cause of action for denial of access to the courts because "surely there was something Plaintiff could [have] done to prevent a default judgment" had Defendants not acted as they did; (4) Defendants Kelly and Bennett were the proximate cause of him losing the money from his inmate account; and (5) Defendants are not entitled to qualified immunity.  (Dkt. No. 52-2.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[2]  Rather, "[a] dispute

_____

[2]    *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere

regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  In determining whether a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[5]

      **B.**     **Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

      To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be

───────────

allegations . . . of the [plaintiff's] pleading . . . .").

      [3]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

      [4]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

      [5]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

granted.[6]  For these reasons, it is appropriate to briefly summarize the recently clarified legal

standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  It has long been understood that a defendant may base such a motion on either or both

of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil

Procedure 8(a)(2);[7] or (2) a challenge to the legal cognizability of the claim.[8]

_____

[6]        The authority to conduct this *sua sponte* analysis is derived from two sources: (1)
28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a
prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . .
is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . .
seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. §
1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's]
complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to
state a claim upon which relief may be granted . . . ."

[7]        *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed.
2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the
sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v.
Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the
formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P.
8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.
Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests
the formal legal sufficiency of the complaint, determining whether the complaint has conformed
to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to
relief.'").

[8]        *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations
give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.
 . . . In addition, they state claims upon which relief could be granted under Title VII and the
ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction
between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a
plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187
(2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a
complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay
v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[9] The main purpose of this rule is to "facilitate a proper decision on the merits."[10] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

---

12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[9]    *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[10]    *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

for the Court to assess the sufficiency of [plaintiff's] claims."[11]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[12]  However, it is well established that even this liberal notice pleading standard "has its limits."[13]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[14]

_____

[11]       *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.)  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[12]       *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[13]       2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[14]       *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69[15] (2007).[16]  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests.  *Id*. at 1965, n.3 [citation omitted].  While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

---

*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[15]     All references to *Bell Atlantic* will cite the Supreme Court Reporter rather than the United States Reports.  The United States Reports version of the case does not include page numbers at this time.

[16]     The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Bell Atlantic*, 127 S. Ct. at 1969.

11

(of course) that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[17]  The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[18]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was

---

[17]    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[18]    *See, e.*g., *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

12

in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson*

*v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a

claim under Rule 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted].

That statement was merely an abbreviation of the often-repeated point of law–first offered in

*Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon

which [the claim is based]" in order to successfully state a claim. *Bell Atlantic*, 127 S. Ct. 1965,

n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]). That statement in no way meant that all

pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the

claim and the "grounds" on which the claim rests without ever having to allege any facts

whatsoever.[19] There must still be enough facts alleged to raise a right to relief above the

---

[19]      For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil
rights complaint because, although the complaint was otherwise factually specific as to how the
prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of
approximately 18 months, the complaint (according to the district court) failed to allege facts
plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S. Ct. at
2199. The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8
and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to
"give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the
plaintiff had alleged that the termination of his hepatitis C medication for 18 months was
"endangering [his] life" and that he was still in need of treatment for [the] disease." *Id.* at 2200.
While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision
(and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need
mentioning in the short decision: a claim of deliberate indifference to a serious medical need
under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious
medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental
state possessed by prison officials with regard to that sufficiently serious medical need. The
*Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-
2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that,
during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation
plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not
*also* allege that he suffered an independent and "substantial injury" as a result of the termination
of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous
decisions, from district courts within the Second Circuit alone, have found that suffering from

speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[20]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[21]  In other words,  while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[22]  Moreover, "courts

---

hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[20]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[21]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[22]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

they suggest."[23]   Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[24]   Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[25]   In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[26]

---

opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2
(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987]
[considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases
where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to
consider materials outside the complaint to the extent they 'are consistent with the allegations in
the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering
factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part
on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on
case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a
matter of right, to amend his complaint once at any time before the service of a responsive
pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39
(2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to
dismiss) [citations omitted].

[23]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) [internal quotation and
citation omitted].

[24]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and
citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").

[25]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[26]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[27] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[28]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the

---

course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g., See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[27]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[28]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[29]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[30]

## III.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's claims must be dismissed because Plaintiff failed to exhaust his administrative remedies.  (Dkt. No. 50-24 at 3-5.)  Defendants are not entitled to summary judgment on this ground because Plaintiff has raised a genuine issue of material fact that he exhausted his administrative remedies.

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

---

[29]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[30]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

exhausted."[31]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[32]  The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[33]  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one (21) calendar days of the alleged occurrence.  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen (16) calendar days from receipt of the grievance to informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calendar days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing.  Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven (7) calendar days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the grievant's appeal.  Third, a grievant may appeal to the central office review committee ("CORC") within seven (7) working days of receipt of the superintendent's written decision.  CORC is to render a written decision within thirty (30) calendar days of receipt of the appeal.  It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level,

---

[31]     42 U.S.C. § 1997e.

[32]     *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[33]     7 N.Y.C.R.R. § 701.7.

including CORC, to complete the grievance process.[34]

Here, the Director of the Inmate Grievance Program for the Department of Correctional Services has provided the Court with a list of grievances filed by Plaintiff while he was housed at Upstate.  (Dkt. No. 50-4, Ex. A.)  The Director has not provided the Court with the grievances themselves.  The Director declares that "none of the grievances concerned alleged improper conduct with respect to the plaintiff's inmate account" and that the list does not "suggest that [Plaintiff] filed any grievance appeals with CORC concerning allegations that staff at Upstate Correctional Facility promised to assist [P]laintiff with any personal litigation ... but then failed to do so."  (Dkt. No. 50-4 at ¶¶ 9-10.)  However, the dates and captions of two items on the list indicate that the grievances may have concerned some of the issues raised in the lawsuit.  On August 16, 2005, the same day that Plaintiff alleges he confronted Defendant Bennett regarding his alleged conduct, Plaintiff filed a grievance captioned on the list as "Alleges CO Set Him Up." He filed a grievance with the same title two days later, on August 18, 2005.  (Dkt. No. 50-4, Ex. A.)  Without the benefit of the grievances themselves, the Court is unable to determine whether or not Plaintiff's grievances involved the conduct at issue here.  Thus, the evidence submitted by Defendants does not establish that Plaintiff failed to exhaust his administrative remedies.

In an affidavit filed in opposition to the motion for summary judgment, Plaintiff states

---

[34]      7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp.2d 546, 549 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g., Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F. Supp.2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

that when he did not receive a response to his grievances, he appealed to the next level as directed by the regulations.  (Dkt. No. 52-6 at ¶ 7.)  He has attached to his affidavit copies of a September 2, 2005, letter from Defendant Woods (the superintendent of the facility, with whom Plaintiff would have to file an appeal from any decision or non-decision of the IGRC)  rejecting several grievances (one of which was clearly labeled "appeal to superintendent of a grievance of 3-31-04") and directing Plaintiff to "send this directly to the Grievance Office for processing." (Dkt. No. 52-6, Ex. A.)  Plaintiff has also submitted two documents titled  "appeal to CORC of grievance" that address his concerns regarding Defendant Bennett and the million-dollar surcharge.  *Id*.   These documents suggest that Plaintiff followed DOCS procedure by filing grievances at the next level when the IGRC and Defendant Woods failed to respond.  Plaintiff's opposition papers thus raise a genuine issue of material fact regarding his exhaustion of administrative remedies.

Defendants' reply does not address Plaintiff's assertions regarding the exhaustion of administrative remedies.  Rather, the reply addresses only the issues of personal involvement and the constitutional merits, asserting that Plaintiff's "opposition raises no additional questions concerning the[] other grounds."  (Dkt. No. 56 at 1.)

In light of the foregoing, I recommend that Defendants' motion for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies be denied.

**B.     Personal Involvement by Defendant Woods and Kelly**

Defendants argue that Plaintiff's claims against Defendant Woods should be dismissed because he was not personally involved in any alleged constitutional violation and that all claims against Defendant Kelly relating to events after August 2003 should be dismissed for lack of

personal involvement.  Defendants are correct as to Defendant Woods but have not shown that

they are correct regarding Defendant Kelly.

     1.   <u>Woods</u>

     The complaint alleges that Defendant Woods denied or ignored Plaintiff's grievances.

(Dkt. No. 14 at ¶ 4.)  In opposition to the motion for summary judgment, Plaintiff states that

Defendant Woods was "more than aware" of the actions of Defendants Kelly and Bennett and

that it is the unwritten policy of Upstate Correctional Facility to commend employees for

violating prisoners' rights.  (Dkt. No. 52-2 at 4.)  Defendants argue that the complaint does not

adequately allege, and Plaintiff cannot raise a genuine issue of material fact showing, that

Defendant Woods was personally involved in any of the alleged violations.  (Dkt. No. 50-24 at 5-

7.)  Defendants are correct.

     "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.

1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[35]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[36]  If the

defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a

mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the

doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

---

     [35]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*,
434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

     [36]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

unlawful conduct.[37]  In other words, supervisory officials may not be held liable merely because

they held a position of authority.[38]  Rather, supervisory personnel may be considered "personally

involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation

after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or

custom under which the violation occurred, (4) had been grossly negligent in managing

subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that the violation was occurring.[39]

A prisoner's allegation that a supervisory official failed to respond to a grievance is

insufficient to establish that the official "failed to remedy that violation after learning of it

through a report or appeal" or "exhibited deliberate indifference ... by failing to act on

information indicating that the violation was occurring."  *Rivera v. Goord*, 119 F. Supp. 2d 327,

344-45 (S.D.N.Y. 2000).  *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y.

1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient

to establish liability.").  District Court decisions in this Circuit have established that:

> where a supervisory official like the Commissioner of Corrections or
> a prison Superintendent receives letters or similar complaints from an
> inmate and does not personally respond, the supervisor is not
> personally involved and hence not liable. On the other hand, where a
> supervisor receives an inmate grievance or other complaint and

---

[37]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d
431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.
1985).

[38]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[39]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*,
21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986)
(setting forth four prongs).

responds to it, the supervisor may be liable ... At first glance, these holdings might seem counter-intuitive, as giving supervisors an incentive to inaction in order to avoid personal liability. However, it must be noted that the Commissioner and individual prison Superintendents receive innumerable letters and other forms of inmate complaints and delegate subordinates to handle them. Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.

*Walker v. Pataro*, No. 99 CIV. 4607, 2002 WL 664040, at *12-13 (S.D.N.Y. Apr. 23, 2002) (internal citations omitted) (collecting and analyzing decisions)[40].

Here, Plaintiff has not alleged or produced evidence raising a genuine issue of material fact that Defendant Woods was personally involved in any of the alleged violations. Therefore, I recommend that all claims against Defendant Woods be dismissed for lack of personal involvement.

      2.    <u>Kelly</u>

Plaintiff's complaint describes four incidents regarding Defendant Kelly. He alleges that (1) In April 2003, Defendant Kelly visited his cell, told him the injunction was invalid, assured Plaintiff that he would get his money back, and said she would send someone to help him; (2) In July 2004, Defendant Kelly assured him again that he would get his money back because the "documents were without signatures"; (3) In August 2004, Defendant Kelly raised an issue with Plaintiff regarding the possible conflict of the lawyer representing the estate of Samuel Hines; and (4) On February 14, 2005, Defendant Kelly placed a million dollar surcharge on Plaintiff's

---

[40]     The undersigned will provide a copy of this unpublished decision to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

account.  (Dkt. No. 14.)  Defendants argue that Plaintiff has insufficiently pleaded or proved

Defendant Kelly's personal involvement in the second, third, and fourth incidents because

Defendant Kelly left her employment at Upstate in August 2003 and never returned.  (Dkt. No.

50-24 at 7.)  Defendants cite no legal authority for this argument.  Rather, the law upon which

they rely relates entirely to claims against supervisory officials and the absence of *respondeat*

*superior* liability in section 1983 claims.  This law is inapplicable to Plaintiff's allegations

against Defendant Kelly.  I decline to address this argument in light of Defendants' failure to cite

applicable law and my finding, discussed below, that Plaintiff's claims against Defendant Kelly

should be dismissed on the constitutional merits.  Even if I were to address this argument,

Defendants' evidence that Kelly left Upstate in August 2003 would be insufficient to merit

judgment as a matter of law in Kelly's favor.  Rather, it would create a genuine issue of material

fact that would need to be resolved by the trier of fact.

### C.      Access to the Courts

Defendants argue that Plaintiff has failed to state a claim, or produce evidence raising a

genuine issue of material fact, that Defendants violated his First Amendment right of access to

the courts.  (Dkt. No. 50-24 at 8-10.)  Defendants are correct.

It is well settled that inmates have a First Amendment right to "petition the Government

for a redress of grievances."[41]  This right, which is more informally referred to as a "right of

access to the courts," requires States "to give prisoners a reasonably adequate opportunity to

---

[41]      *See* U.S. CONST. amend I ("Congress shall make no law respecting an
establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of
speech, or of the press; or the right of the people peaceably to assemble, and to petition the
Government for a redress of grievances.").

present claimed violations of fundamental constitutional rights."[42]  This right does not, however, guarantee prisoners access to the courts to pursue or defend against *any* claim.  The Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[43]  "'Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.'"[44]  Moreover, even in the context of direct appeals, *habeas corpus* proceedings, or civil rights actions concerning the conditions of confinement, the right of access to the courts "is not 'an abstract, freestanding right to a law library or legal assistance' and cannot ground a Section 1983 claim without a showing of 'actual injury.'"[45]  As a result, to state a claim for denial of access to the courts, a plaintiff must show both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.[46]

Here, Plaintiff's complaint concerns his defense of a wrongful death action filed in state court.  The First Amendment right of access to the courts is not triggered by such an action,

---

[42]     *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004) [citations omitted].

[43]     *Collins*, 423 F. Supp.2d at 415-16 (quoting *Lewis*, 518 U.S. at 355).

[44]     *Id.*

[45]     *Collins v. Goord,* 438 F. Supp.2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 [1996]).

[46]     *Lewis*, 518 U.S. at 353; *Renelique v. Duncan*, 03-CV-1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (Strom, J.); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).

because a state wrongful death action does not concern the validity of an inmate's sentence or the conditions of his confinement.  *Lewis*, 518 U.S. at 354; *Woods v. Purington*, No. Civ. 02-1385-BR, 2004 WL 792783, at *3 (D. Or. Mar. 1, 2004)[47].  Thus, Defendants did not deny Plaintiff his right of access to the courts.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's access to the courts claim.

### D.        Due Process

Construing the complaint liberally, I have deemed Plaintiff's allegations about the removal of money from his inmate account and Defendant Bennett's removal of items from his cell as a due process claim.  Defendants argue that Plaintiff has not stated a claim, or produced evidence raising a genuine issue of material fact, that Defendants violated his right to due process.  (Dkt. No. 50-24 at 10-11.)  Defendants are correct.

> With respect to the stolen or lost property, the Supreme Court has held that even intentional destruction of prisoner's property may not be the basis for constitutional claims if sufficient postdeprivation remedies are provided.  *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981)).  The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner.  *Parratt*, 451 U.S. at 540, 101 S.Ct. at 1915.  Therefore, as long as a meaningful postdeprivation remedy is provided, the Fourteenth Amendment is satisfied.

*Howard v. Leonardo*, 845 F. Supp. 943, 947 (N.D.N.Y. 1994).  "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action."  *Jackson*

---

[47]        Defendants cited this case in their memorandum of law and served a copy of the decision on Plaintiff.

*v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).  Therefore, I recommend that the Court grant

Defendants' motion for summary judgment of Plaintiff's due process claims.

ACCORDINGLY, it is

RECOMMENDED that Defendants' motion for summary judgment (Dkt. No. 50) be

**GRANTED**; and it is further

RECOMMENDED that the Court *sua sponte* dismiss Plaintiff's Fourth Amendment

claim against Defendant Bennett pursuant to 28 U.S.C. § 1915(e)(2); and it is further

RECOMMENDED that the Court enter judgment in favor of Defendants; and it is

further

ORDERED that the Clerk provide Plaintiff with a copy of *Walker v. Pataro*, No. 99 CIV.

4607, 2002 WL 664040 (S.D.N.Y. Apr. 23, 2002).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 26, 2009
     Syracuse, New York

George H. Lowe
United States Magistrate Judge